# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL ANTHONY MILLER,

        Plaintiff,

v.                                                                                  Case No. 16-C-1130

NATHAN PACH, et al.,

        Defendants.

## DECISION AND ORDER

Michael Miller, proceeding pro se, filed an action under 42 U.S.C. § 1983 alleging that his civil rights were violated. The judge originally assigned to this action screened the complaint and allowed Grant to proceed on deliberate indifference claims against Defendants Pach, O'Donnell, Larson, Gunderson, Slinger, Vick, Boatwright, Manlove, Waller, Litscher, Foster, Garcia, and four John Does. The case was reassigned to me on March 3, 2017. Miller filed an amended complaint on August 7, 2017, which will be screened below in accordance with 28 U.S.C. § 1915A.

Defendants filed a motion to partially dismiss the amended complaint on August 21, 2017. Specifically, Defendants move to dismiss Cindy O'Donnell, John Litscher, Gwendlyn Vick, and Brian Foster as parties to this action because they were not named in the amended complaint. Defendants further assert that the amended complaint fails to state a claim against Health Services Manager McCreedy, Nurse Waltz, Dr. Manlove, BHS Medical Director Holzmacher in his personal and official capacity, and BHS Director Greer in his official capacity. Because this screening order addresses those challenges raised in Defendants' motion to dismiss, it will be denied as moot. The court will now screen Miller's amended complaint.

*Screening of Complaint*

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

*Allegations of Complaint*

Miller suffers from Sickle Cell Disease (SCD), a genetic condition caused by irregularly-shaped blood cells. Am. Compl. ¶ 1, ECF No. 34. The Wisconsin Department of Corrections DIA Policy 500.30.55 relates to chronic disease services and is intended to ensure that inmate patients are enrolled in a chronic disease program to decrease the frequency and severity of their symptoms.

2

SCD is listed as an example of a chronic condition and has its own designated treatment care plan, separate from DAI Policy 500.30.55. Miller alleges that when he began serving his prison sentence in 2015, he was not placed on Waupun Correctional Institution's list of patients with significant illnesses and was not initially treated for SCD. *Id.* ¶ 10.

On December 1, 2015, Miller submitted a Health Services Request (HSR) to the Health Services Unit (HSU) complaining of bone pain. Nurse York and Nurse Practitioner Garcia saw him on December 8, 2015. At the appointment, Garcia entered orders to develop a SCD treatment care plan and prescribed Prevnar 13 and Tylenol for Miller's pain. On January 20, 2016, Garcia entered an order for an asthma care plan and requested a status of the SCD care plan order. Miller followed up with Garcia on January 28, 2016 and complained that he never received his vitamins in segregation and that he experienced multiple pains and priapism related to his SCD. As a result, Garcia entered an order for "nursing staff to determine if warm shower is necessary for priapism." *Id.* ¶ 15. Nurse Waltz subsequently initialed the order for the warm shower and entered the order into the WICS database. She also completed a Medical Restriction Form permitting Miller to shower up to six times a day to treat the priapism. Miller alleges that he immediately began requesting showers, but the officers ignored him. He also sent a request for showers to Lieutenant Waller, the segregation unit supervisor.

On January 31, 2016, Miller asked Correctional Officer Pach to take a shower because he was in severe pain. Rather than permit Miller to take a shower, Pach took Miller's copy of his medical restriction paperwork and never returned it. Miller sent a second letter to Waller complaining about Pach's conduct and asked Waller to instruct staff to allow him to shower and return his copy of the medical restriction. He also submitted an HSR complaining he was in severe

pain and that Pach took his copy of the medical restriction. When Miller asked Pach to return his medical restriction a few days later, Pach responded that he gave the paperwork to Waller.

Miller contends that by February 11, 2016, the medical restriction completed by Waltz was not in his segregation unit file, his copy of the restriction was lost, and the entry of the shower restriction was removed from the WICS database. On February 12, 2016, Garcia cancelled the shower restriction and entered an order for a warm compress. The following day, Nurse Gunderson discontinued the instruction for showers and issued an order allowing Miller to have an extra washcloth. Miller alleges that Garcia and Gunderson failed to inform him what he was to use the washcloth for or explain what a warm compress was. After consulting with HSU Manager McCreedy, an inmate complaint examiner recommended that Miller's complaint be dismissed on February 23, 2016.

On April 16, 2016, Miller filed an HSR complaining that he had not received any warm compresses. The following day, Nurse York indicated that his extra washcloths were for the compresses. On May 6, 2016, Garcia ordered various lab testings pursuant to Miller's SCD treatment plan. She also prescribed Meloxicam for his pain and noted the Prevnar 13 medication had not arrived. On May 31, 2016, Nurse Vick examined Miller in his cell regarding SCD pain. In August 2016, Miller went to HSU on an emergency pass for an episode of vomiting and dizziness. On October 13, 2016, HSU staff were called to Miller's cell after he had an SCD attack. Miller alleges that despite his chronic disease, Vick discontinued his Meloxicam, vitamin D, and Ensure supplement medications on November 17, 2016.

As part of the appeal process of his grievance, Ana Boatwright forwarded a redacted copy of the WICS database which omitted the entries granting and discontinuing the shower restriction

to Joanne Bovee on May 2, 2016. On June 2, 2016, Boatwright issued a recommendation for the plaintiff's appeal to be dismissed, reasoning that Garcia's order never authorized a shower restriction. Miller alleges that the Secretary accepted Boatwright's recommendation even though Boatwright misread Garcia's order.

*Analysis*

Miller contends that the defendants violated his Eight Amendment rights in a variety of ways. The Eighth Amendment prohibits "cruel and unusual punishments" and imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that the inmate receives adequate medical care. *Farmer v. Brennan*, 511 U.S. 823, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To state a deliberate indifference claim, an inmate must allege "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations omitted).

What constitutes a sufficiently "serious medical condition" under the first prong is "far from self-defining." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "It is clear that the Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed by the term." *Id.* Seventh Circuit cases demonstrate a broad range of medical conditions that "may be sufficient to meet the objective prong of a deliberate indifference claim." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Second, the official must have acted out of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 832. Deliberate indifference requires more than negligence; it requires that the official know of, yet disregard, an

5

excessive risk to the inmate's health or safety. *Id.* at 835, 837. Thus, subjective knowledge of the risk is required. *Id.* at 838.

Miller alleges Correctional Officer Pach was deliberately indifferent to his serious medical needs when he refused to allow him to take a shower and when he confiscated Miller's copy of the medical restriction and that Waller was deliberately indifferent when he failed to intervene on Miller's behalf in response to his letters both before and after Pach took his copy of the medical restriction. It is not altogether clear that the mere fact that Miller was given an accommodation to shower every day would have been enough to put Pach and Waller on notice that denying him multiple showers a day would create a serious risk to his health. One would not normally conclude that denying an individual a shower would seriously endanger a person's health. Notwithstanding these concerns, however, the court finds that Miller's case should proceed against Pach and Waller, at least for now. It is clear that Miller has a medical condition which was causing him significant difficulty at the time and which, at least according to the allegations of the complaint, Pach and Waller disregarded. For now, the court concludes the claims against Pach and Waller are sufficient to withstand screening under § 1915A.

Miller also named Nurse York, Nurse Practitioner Garcia, Nurse Larson, Nurse Waltz, and Nurse Gunderson as defendants, arguing that they were deliberately indifferent to his medical needs. Miller asserts Nurse Garcia was deliberately indifferent when she failed to schedule Miller to have his case reviewed by a SCD specialist. He also asserts that Nurse Garcia and Nurse Gunderson were deliberately indifferent to his medical needs because they discontinued his shower restriction and replaced it with an order to use warm compresses to relieve his pain. The Eighth Amendment does not require that physicians or medical staff comply with the treatment preferences of a prisoner. *See*

6

*Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003). An inmate that receives some form of medical care must allege that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the inmate's serious medical condition." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Miller has failed to meet this high burden here.

As to Miller's claims that Nurse Garcia, Nurse Gunderson, and Nurse York were deliberately indifferent to his medical needs because they failed to educate him on what a warm compress was, Miller did not ask HSU how to apply the warm compress until two months after he was ordered to use it to relieve his pain, and the following day, Nurse York explained how to use it. These allegations do not support his claim that these defendants were deliberately indifferent to his compress concerns.

He further asserts Nurse Garcia and Nurse York were deliberately indifferent because they failed to determine why he did not receive the Prevnar 13 Garcia prescribed for him. While the Eighth Amendment does not require that physicians or medical staff comply with the treatment preferences of a prisoner, the Seventh Circuit has recognized that a delay in effective treatment may support a claim of deliberate indifference, "especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Miller alleges Garcia failed to determine why he had not received his prescription for Prevnar 13, even though he told her on two separate occasions that it did not arrive. Based on these allegations, Miller may proceed on a deliberate indifference claim against Nurse Garcia. While Miller asserts that he told Nurse Garcia he had not received the prescription, he does not allege that Nurse York was aware that he did not have it. The complaint contains no allegations that he requested the prescription from York or

7

complained to her that he never received it. In short, Miller has failed to state a deliberate indifference claims against Nurse York.

Miller alleges that Nurse Garcia, Nurse Larson, and Nurse Waltz were deliberately indifferent to his serious medical needs when they allowed security staff to disregard the January 28, 2016 shower restriction. He also asserts that Nurse Larson was deliberately indifferent because she did not respond to his January 31, 2016 HSR regarding the correctional officers' conduct until February 11, 2016. Liability under § 1983 is based on a defendant's personal involvement in the constitutional violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf–Lillie v. Sonquisti*, 699 F.2d 864, 869 (7th Cir. 1983). While a government employee is responsible for her own misdeeds, she is not responsible for anyone else's. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

A prison official who knew about a constitutional violation, and had the ability to intervene, but failed to do so may be personally involved in the constitutional violation. *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004). An official is liable under § 1983 if she facilitates, approves, condones, or "turn[s] a blind eye" to a constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996) (quoting *Gentry*, 65 F.3d at 561). A plaintiff must allege that the official knew of or suspected a specific risk facing the plaintiff and "consciously ignored it or failed to stop the abuse once it was discovered." *J.H. ex rel. Higgen v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003).

Here, Miller's complaint does not contain any allegations that Nurse Garcia, Nurse Waltz, or Nurse Larson personally knew that correctional officers prevented Miller from taking daily

8

showers in accordance with the medical restriction or that they had an ability to intervene and prevent the correctional officers' conduct. Although Miller submitted an HSR on January 31, 2016 complaining that he was in severe pain and that Pach took his copy of the medical restriction, he does not allege that Nurse Garcia, Nurse Waltz, or Nurse Larson personally received this request. The complaint contains no allegations that Nurse Garcia, Nurse Waltz, or Nurse Larson were a aware of and turned a blind eye to the correctional officers' conduct. Miller's claim that Nurse Garcia allowed another nurse to discontinue the medications she had ordered fails for the same reason. He does not allege that Nurse Garcia knew that this nurse discontinued the prescription. Accordingly, this claim must be dismissed.

Miller further alleges that Nurse Garcia was deliberately indifferent when she failed to schedule a three-month follow-up appointment with him after May 6, 2016 and that Dr. Manlove was deliberately indifferent when he failed to schedule appointments to treat Miller's SCD after he received Miller's charts in November 2015. Yet, Miller does not allege that he made a request to see Dr. Manlove or that Dr. Manlove was aware of a request if one was made. He also did not allege that he requested to see Nurse Garcia regarding any pain related to SCD after May 6, 2016 or that Nurse Garcia ignored these requests. In sum, Miller has not asserted that Dr. Manlove or Nurse Garcia knew of, yet disregarded, an excessive risk to Miller's health or safety, *Farmer*, 511 U.S. at 835, and these claims fail as well.

Miller claims Boatwright was deliberately indifferent in preparing her report recommending that the Secretary dismiss his inmate complaint. A complaint examiner shows deliberate indifference when she refuses to do her job or "routinely sends grievances to the shredder without reading them." *Burks v. Rasmisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). A complaint examiner is not liable under

§ 1983 for merely recommending that an inmate complaint be dismissed. *See id.* In other words, recommending the denial of a complaint does not amount to deliberate indifference absent other malicious acts. Even if Miller disagrees with her outcome, he has not alleged that she acted maliciously in recommending that his complaint be denied. Accordingly, Boatwright will be dismissed from this action.

Miller also asserts deliberate indifference claims against BHS Medical Director Holzmacher and BHS Director Greer. He asserts these defendants implemented policies that discriminate against African American men with SCD. Miller has sued Holzmacher in his personal and official capacity but only sued Greer in his official capacity and seeks declaratory and monetary relief from these defendants. A suit against a state official acting in his official capacity is treated as a suit against the state in which that official works. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). States are immune from suits for money damages pursuant to the Eleventh Amendment. *Id.* at 66. In short, Miller's claims against Directors Holzmacher and Greer in their official capacities are barred and must be dismissed. *See id.* at 71.

As to Miller's claims against Director Holzmacher in his personal capacity, the complaint alleges that "Defendant Holzmacher was deliberately indifferent to the plaintiff's serious medical needs when he signed the current version of DAI Policy 500.30.55 which discriminates against African American men afflicted with the genetic SCD." Am. Compl. ¶ 50. However, he has failed to sufficiently allege that DAI Policy 500.30.55 violates his constitutional rights. Although the Policy does not address SCD, Miller's complaint concedes that SCD "has its own designated form for a treatment care plan, DOC-3676." *Id.* ¶ 4. In short, Miller has failed to state a claim that

Holzmacher created a policy that discriminates against African American men with SCD or is deliberately indifferent to this condition.

Miller also claims that Director Holzmacher violated his constitutional rights by failing to periodically review Chronic Disease Management plans, resulting in Miller's treatment not meeting national standards of care. Section 1983 does not provide a cause of action against an individual based upon their supervisory role over another person. *See Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 699 n.58 (1978); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984)). A defendant will only be liable under § 1983 if the conduct causing the medical deprivation "occurs at his direction or with his knowledge and consent." *Gentry*, 65 F.3d at 561. Miller does not allege that Director Holzmacher had personal knowledge of Miller's medical care and treatment or that he was directly involved in depriving him of his constitutional rights. Therefore, Holzmacher will be dismissed as a defendant in this action.

Miller has also listed Health Services Manager McCreedy as a defendant. The complaint contains only one allegation related to McCreedy: "On 2.23.16, the inmate complaint examiner recommended that the complaint be dismissed based upon his consultation with HSU Manager McCreedy who indicated that he had reviewed the plaintiff's file and confirmed that Garcia ordered a shower restriction on 1.28 but stated that on 2.16 the order was canceled and replaced with an order allowing him to receive warm compresses twice a day. McCreedy stated that he was unable to confirm that plaintiff's claim that staff on the unit failed to allow him to take a shower while it was in effect." Am. Compl. ¶ 26. Miller has failed to indicate how McCreedy's actions violated his

constitutional rights or what injury or damage McCreedy's actions allegedly caused Miller. Therefore, he has failed to state a claim against McCreedy.

Miller's original complaint named Cindy O'Donnell, John Litscher, Gwendlyn Vick, and Brian Foster as defendants. Yet, these defendants were not mentioned in the amended complaint. Accordingly, they will be dismissed from this action. In sum, Miller may proceed on his deliberate indifference claims against defendants Pach and Waller as well as his deliberate indifference claim that Nurse Garcia was deliberately indifferent with respect to his Prevnar 13 prescription.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (ECF No. 35) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants O'Donnell, Litscher, Vick, Foster, Larson, Gunderson, York, Boatwright, Manlove, McCreedy, Waltz, Holzmacher, and Greer are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint within **twenty-one days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that all requests for discovery shall be served by a date sufficiently early so that all discovery is completed no later than **May 11, 2018**.

**IT IS FURTHER ORDERED** that dispositive motions are to be filed no later than **June 10, 2018**.

Dated at Green Bay, Wisconsin this   14th   day of December, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
