UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL ANTHONY MILLER,

        Plaintiff,

v.                                                  Case No. 16-C-1130

NATHAN PACH, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Michael Anthony Miller, who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that defendants Nathan Pach, Shane Waller, and Nancy Garcia were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. In particular, Miller asserts Pach and Waller disregarded a medical restriction that allowed him to take six warm showers per day while incarcerated in the restrictive housing unit and Garcia failed to ensure that a vaccination she had ordered for him was actually administered by nursing staff. Presently before the court is the defendants' motion for summary judgment. Miller has not responded to the motion. For the following reasons, the defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

The following facts are taken from the defendants' proposed findings of fact. Because Miller did not respond to the proposed facts, they will be deemed admitted for the purposes of summary judgment. *See* Civil L.R. 56(b)(4).

At all times relevant to this action, Miller was housed at Waupun Correctional Institution. Miller has sickle cell disease, a genetic condition that affects his red blood cells. On December 8, 2015, Miller presented for an appointment with Nurse Practitioner Nancy Garcia. Garcia wrote Miller a prescription for Tylenol and entered an order that Miller receive his vaccinations, including the pneumococcal vaccination Prevnar-13. Prevnar-13 is given to patients in the prison setting who have medical conditions such as sickle cell disease. Nursing staff ordered the vaccination on the same day Garcia entered the order. Once a nurse places an order for a vaccination, the vaccination may not be delivered to the prison for up to two months.

On January 16, 2016, Garcia entered another order instructing nursing staff to schedule Miller for a follow-up appointment to monitor his sickle cell and asthma and requesting a status of the Prevnar-13 vaccination. Nursing staff noted Miller would receive the vaccination that week. Miller ultimately received the vaccination on January 26, 2016.

Miller reported at a follow-up appointment with Garcia on January 28, 2016 that he recently received his vaccinations. Garcia then entered an order for nursing staff to update the Wisconsin Immunization Registry to reflect that the vaccinations had been administered. Miller also noted at this appointment that he had a history of priapism, a condition that causes the prolonged, sometimes painful erection of the penis. He told Garcia that he had received extra showers at a previous institution to alleviate this problem. Garcia wrote an order for Miller to receive warm showers as needed for priapism and as determined by an officer. Nursing staff translated her order into a medical restriction form stating that Miller may "shower up to 6x (sic) day for medical necessity (priapism)." Although the medical restriction indicates that Miller may shower up to six times per day, Garcia did not actually authorize this number of showers. She did not believe that it was likely

2

that a patient with sickle cell disease would experience priapism that often. She also did not intend for Miller to receive showers simply because he requested one, as reflected in the medical restriction. Instead, a security officer was supposed to visually confirm Miller's need for a warm shower in order for him to receive one.

Miller claims that he began requesting warm showers as soon as Garcia wrote the order on January 28, 2016. It appears Miller misunderstood Garcia's order, believing that he was allowed to take warm showers simply due to joint pain. On January 31, 2016, Miller submitted a health services request form stating that he had a medical restriction allowing him to take hot showers for joint pain. He also submitted an inmate complaint on that day stating that his shower restriction for joint pain was not being followed.

Miller asserts he asked Restricted Housing Unit (RHU) Officer Nathan Pach if he could take a shower on January 31, 2016, but Pach responded that it was not a shower day. Miller claims he showed Pach the restriction form stating Miller could shower six times per day. Pach advised Miller that he wanted to show the from to the RHU sergeant "to make sure it was right." Miller asked Pach about the form the next time he saw Pach, and Pach confirmed that he gave the form to RHU Sergeant Shane Waller. Although Miller claims he wrote Waller before and after January 31, 2016 to inform him of the shower restriction, neither Waller nor Pach recall Miller's request, and there is no record of Miller's correspondence to Waller. Even though Miller did not receive an unscheduled shower on January 31, 2016, he continued to take his normal showers, scheduled twice per week. Miller did not request additional showers after January 31, 2016.

Garcia received Miller's January 31, 2016 HSU request on February 11, 2016. In her response to the request, she advised Miller that the showers were ordered for priapism, not joint

3

pain, and that the showers would be replaced with warm compresses. At a follow-up appointment on May 6, 2016, Miller reported that the warm compresses helped his priapism.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving that summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 933, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429

4

U.S. 97, 104–05 (1976). This does not mean, however, that every claim by an inmate that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that claim." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Miller asserts that the defendants were deliberately indifferent to his medical needs because Garcia failed to ensure that he received a vaccination she ordered and Pach and Waller did not allow him to take six warm showers per day. The court will address each claim in turn.

**A. Vaccination**

Miller alleges that Garcia was deliberately indifferent because she failed to ensure that a vaccination she had ordered for him was actually administered by nursing staff. Contrary to Miller's assertions, however, Garcia was anything but indifferent to his request for the vaccination. Garcia entered an order that Miller receive Prevnar-13 on December 8, 2015. On January 16, 2016, Garcia entered another order requesting a status of Miller's Prevnar-13 vaccination. Nursing staff confirmed that Miller would receive the vaccination that week. At a follow-up appointment on January 28, 2016, Miller reported that he recently received the vaccination.

To the extent Miller asserts Garcia was deliberately indifferent to the speed with which he received the vaccination, his claim fails. Miller has not presented any medical evidence that the delay between Garcia ordering the vaccination on December 8, 2015 and the administration of the vaccination on January 26, 2016 detrimentally affected, unnecessarily prolonged, or exacerbated his pain. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused

5

some degree of harm." (citing cases)). In other words, a plaintiff must provide "medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Miller has not shown that the delay in receiving the vaccination caused any injury or an infection or was otherwise detrimental. The Seventh Circuit has recognized that "delays are common in the prison setting with limited resources." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016); *see also Wood v. Idaho DOC*, 391 F. Supp. 2d 852, 866–67 (D. Idaho 2005) (noting that mere delay in receiving a vaccination does not constitute an Eighth Amendment violation when the delay did not cause serious harm or the contraction of the virus). Absent evidence that the delay in receiving the Prevnar-13 vaccination was caused by more than the time it took for the vaccination to be delivered to the institution, no reasonable jury could conclude that any delay in receiving the vaccination was caused by Garcia's deliberate indifference. For these reasons, Miller has not established that Garcia was deliberately indifferent to his medical needs.

**B. Showers**

Miller also asserts that Pach and Waller were deliberately indifferent to his serious medical needs because they did not allow him to take six warm showers per day. The defendants argue that Miller has not established that he had an objectively serious medical need for extra showers. What constitutes a sufficiently "serious medical need" is "far from self-defining." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A condition may be sufficiently serious where failure to treat the condition would "result in further significant injury or the unnecessary and wanton infliction of pain" or where the injury is one that "a reasonable doctor or patient would find important and worthy of comment or treatment." *Id.* "It is clear that the Supreme Court contemplated that medical conditions far less critical than 'life threatening' would be encompassed by the term." *Id.* Seventh

6

Circuit cases recognize that "a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011)). This question is far from clear when the inmate has a chronic condition that causes continuing problems that can only be controlled, not cured. Miller's history with priapism suggests that his pain constitutes a serious medical condition.

Even assuming Miller has a serious condition, Miller must demonstrate that Waller and Pach were deliberately indifferent to his medical needs. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to Miller's health or safety. *Farmer*, 511 U.S. at 835, 837. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). The plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Miller maintains that when he asked Pach to take a shower, Pach denied his request and took Miller's copy of his medical restriction without returning it. Pach asserts that he was not deliberately indifferent to Miller's needs because rather than ignore any risk, he advised Miller that it was not a shower day and gave a copy of the medical restriction to his supervisor for review. Miller has not established that Pach did not act reasonably under the circumstances. *See Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent if he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can

7

be inferred."). In addition, Miller has not shown that Pach "knowingly exposed [him] to a substantial danger to his health for no good reason." *Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir. 2001). There is no evidence that Miller told Pach the reason he needed a shower or that he was suffering from priapism. Instead, the record reflects that Miller asked for a shower for his joint pain, a condition that Garcia did not approve as requiring additional showers. Therefore, Pach was not deliberately indifferent to Miller's serious medical needs.

Similarly, Waller asserts that he was not deliberately indifferent to Miller's serious medical needs because he did not know about them. Even though the medical restriction allowed Miller to "shower up to [six times a] day for medical necessity (priapism)," Waller did not know that this condition caused painful, prolonged erections or that denying Miller multiple showers per day could create a serious risk to his health. Miller has not provided any evidence showing that Waller knew or suspected that failing to allow Miller to shower would exacerbate his medical condition. Again, Miller has not shown that Waller knowingly exposed him to a substantial danger to his health for no good reason. *Id.* In short, Waller was not deliberately indifferent to Miller's serious medical needs.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 43) is **GRANTED**. The Clerk is directed to enter judgment dismissing this case with prejudice.

Dated this  17th  day of July, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court